```
         IN THE UNITED STATES DISTRICT COURT
       FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

                       CHARLESTON
```

**BRUCE W. HURLEY,**

      **Plaintiff,**

**v.**                                            **CASE NO. 2:07-cv-00732**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

      **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for disability insurance benefits ("DIB") and supplemental security income ("SSI"), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. By standing order, this case was referred to this United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the court are the parties' cross-briefs in support of judgment on the pleadings.[1]

Plaintiff, Bruce W. Hurley (hereinafter referred to as "Claimant"), filed applications for SSI and DIB on June 20, 2005,

---

[1] The court reminds the parties that pursuant to Local Rule of Civil Procedure 9.4(a), Plaintiff should file "a brief in support of the complaint," while Defendant files "a brief in support of the defendant's decision." Local Rules of the United States District Court for the Southern District of West Virginia, Local Rule of Civil Procedure 9.4(a).

alleging disability as of June 3, 2005, due to arthritis.  (Tr. at 75-78, 79-82, 107.)  The claims were denied initially and upon reconsideration. (Tr. at 30-34, 35-38, 44-46, 47-49.)  On November 8, 2006, Claimant requested a hearing before an Administrative Law Judge ("ALJ").  (Tr. at 51.)  The hearing was held on April 27, 2006, before the Honorable Theodore Burock.  (Tr. at 230-60.)  By decision dated March 19, 2007, the ALJ determined that Claimant was not entitled to benefits.  (Tr. at 16-25.)  The ALJ's decision became the final decision of the Commissioner on September 27, 2007, when the Appeals Council denied Claimant's request for review. (Tr. at 5-8.)  On November 16, 2007, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability.  See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972).  A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.  20 C.F.R. §§ 404.1520, 416.920 (2007).  If an individual is found "not

2

disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2007). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to

perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date. (Tr. at 18.) Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of arthritis/gout, Achilles tendon injury status post corrective surgery and obesity. (Tr. at 18.) At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 18.) The ALJ then found that Claimant has a residual functional capacity for light work, reduced by nonexertional limitations. (Tr. at 19.) As a result, Claimant cannot return to his past relevant work. (Tr. at 23.) Nevertheless, the ALJ concluded that Claimant could perform light and sedentary jobs such as bakery worker, warehouse checker, rental clerk, call out operator, telephone solicitor, escort vehicle driver and dispatcher, which exist in significant numbers in the national economy. (Tr. at 24.) On this basis, benefits were denied. (Tr. at 25.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial

evidence. In <u>Blalock v. Richardson</u>, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

<u>Blalock v. Richardson</u>, 483 F.2d 773, 776 (4th Cir. 1972) (quoting <u>Laws v. Cellebreze</u>, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

<u>Claimant's Background</u>

Claimant was forty years old at the time of the administrative hearing. (Tr. at 234.) Claimant graduated from high school. (Tr. at 235.) In the past, he worked as a window salesman, a cook and as a shipping clerk at a t-shirt company. (Tr. at 248-51.)

<u>The Medical Record</u>

The court has reviewed all evidence of record, including the

5

medical evidence of record, and will summarize it briefly below.

On August 31, 2005, a State agency medical source, who is not a physician, completed a Physical Residual Functional Capacity Assessment and opined that Claimant could perform medium level work, with an occasional ability to climb ramps and stairs, balance, stoop, kneel, crouch and crawl, an inability to climb ladders, ropes and scaffolds and a limited ability to handle. (Tr. at 136-43.)

On July 24, 2005, Kip Beard, M.D. examined Claimant at the request of the State disability determination service. Dr. Beard diagnosed chronic arthralgias with evidence of inflammatory arthritis with right wrist synovitis and a right olecranon bursa nodule and a left Achilles rupture, status post corrective surgery. (Tr. at 182.) Dr. Beard wrote that Claimant had swelling and warmth with tenderness of the right wrist and some motion loss and mild weakness. Dr. Beard felt that this represented acute synovitis of the right wrist. Claimant also had a large, mobile, hard nodule within the right olecranon bursa. There was no evidence of rheumatoid arthritis in the hands. Dr. Beard opined that this could represent gout or pseudogout. Dr. Beard noted that his exam revealed evidence of surgery on the left Achilles tendon. The left Achilles reflex was diminished. There was some mild weakness of the left ankle and some atrophy of the left calf. However, Dr. Beard noted that this did not produce a limp, and

Claimant did not present with ambulatory aids. (Tr. at 183.)

On December 5, 2005, a State agency source, Uma Reddy, M.D., completed a Physical Residual Functional Capacity Assessment and opined that Claimant could perform medium level work, with an occasional ability to climb ladders, ropes and scaffolds and a frequent ability to climb ramps and stairs, balance, stoop, kneel, crouch and crawl, and a need to avoid concentrated exposure to extreme cold and hazards. (Tr. at 186-93.)

On October 19, 2000, Claimant underwent repair of his Achilles tendon and gastroc-soleus muscle slide. (Tr. at 196.) During his hospitalization, Claimant also was treated for high blood pressure. (Tr. at 201.)

The record includes treatment notes from David L. Soulsby, M.D. dated March 24, 2006, and April 11, 2006. On March 24, 2006, Claimant complained of bilateral knee and ankle pain. Claimant reported he had been taking eight Ibuprofen at a time and his mother's Lortab. Claimant admitted to drinking a six-pack of beer per day. Dr. Soulsby diagnosed possible rheumatoid arthritis, osteoarthritis, bilateral ankle with swelling of the right ankle and olecranon bursitis in the right elbow. He ordered a rheumatoid profile and a uric acid level test and prescribed a Medrol Dose Pack. (Tr. at 206.) On April 11, 2006, Dr. Soulsby noted that the lab work showed negative ANA, negative RA and the CBC was within normal limits. Uric acid was elevated. Claimant reported his

symptoms had improved somewhat with the exception of right lateral foot pain. X-rays showed a possible stress fracture in the foot, but Dr. Soulsby did not believe that this was the cause of Claimant's pain. Dr. Soulsby prescribed a post op shoe. (Tr. at 205.)

On October 26, 2002, Claimant received third degree burns to his knee, second degree burns to his upper extremity and first degree burns to his face after trying to fuel an ATV in his garage where a kerosene fuel heater was also in operation. He underwent wound debridement and skin grafts and was discharged on November 9, 2002. (Tr. at 208-21.)

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ failed to comply with the regulations in analyzing the combined effect of Claimant's impairments and in posing a hypothetical question to the vocational expert; and (2) the ALJ erred in his pain and credibility analysis. (Pl.'s Br. at 2-12.)

The Commissioner argues that (1) the ALJ properly evaluated Claimant's impairments singly and in combination; (2) the hypothetical question included the limitations supported by the record; and (3) the ALJ properly evaluated Claimant's credibility and subjective complaints of pain. (Def.'s Br. at 8-14.)

The court proposes that the presiding District Judge find that

the ALJ adequately considered Claimant's impairments alone and in combination.

The social security regulations provide,

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.

20 C.F.R. §§ 404.1523, 416.923 (2007). Where there is a combination of impairments, the issue "is not only the existence of the problems, but also the degree of their severity, and whether, together, they impaired the claimant's ability to engage in substantial gainful activity." Oppenheim v. Finch, 495 F.2d 396, 398 (4th Cir. 1974). The ailments should not be fractionalized and considered in isolation, but considered in combination to determine the impact on the ability of the claimant to engage in substantial gainful activity. Id. The cumulative or synergistic effect that the various impairments have on claimant's ability to work must be analyzed. DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983).

In his decision, the ALJ explained that "[a]lthough it is unclear that each of these [severe] ailments, [arthritis/gout, Achilles tendon injury status post corrective surgery and obesity] evaluated separately significantly limits the claimant's physical or mental abilities to do work activities, after giving the

9

claimant the benefit of every doubt, the combination of these impairments is found to be severe so the five-step evaluation process may continue ...." (Tr. at 18.) The ALJ's pain analysis and residual functional capacity finding, as well as the hypothetical question to the vocational expert, further reflect a consideration of Claimant's impairments in combination. (Tr. at 20-23, 252, 254.)

The court further proposes that the presiding District Judge find that the ALJ's pain and credibility findings are consistent with the applicable regulations, case law and social security ruling ("SSR") and are supported by substantial evidence. 20 C.F.R. §§ 404.1529(b) and 416.929(b) (2007); SSR 96-7p, 1996 WL 374186 (July 2, 1996); Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996).

In his decision, the ALJ found that Claimant produced evidence of an impairment that could reasonably be expected to cause Claimant's alleged symptoms. (Tr. at 22.) The ALJ proceeded to the second step in the pain analysis, and his decision contains a thorough consideration of Claimant's daily activities, the location, duration, frequency, and intensity of Claimant's pain, precipitating and aggravating factors and Claimant's medication. (Tr. at 20-22.)

The ALJ ultimately concluded that Claimant was not entirely credible. The ALJ provided a lengthy and in depth explanation as

10

to why he found Claimant's subjective complaints not entirely credible:

> The claimant's description of the severity of the pain as being a 10 on a scale of 1 to 10 and preventing him from sleeping, has been so extreme as to appear implausible. Additionally, since the application was filed, the claimant alleges other ailments of a sharp shooting pain down his leg and a lack of concentration, but is not seeking medical care for either alleged ailment and did not mention such in his hearing testimony; this, and the claimant's failure to get medical care for his gout, even failing to return to Dr. Soulsby for treatment suggests that the symptoms may not have been as serious as has been alleged in connection with this application and appeal. Moreover, neither the objective findings upon examination by two physicians, Dr. Beard and Dr. Soulsby, nor the limited treatment begun by Dr. Soulsby, support the extreme symptoms and pain alleged by the claimant. Furthermore, although the claimant alleges a lack of means to obtain medical treatment, he obtained necessary medical care in 2000, 2002, and 2006, including two hospitalizations encompassing three surgeries, and has not explained his failure to continue treatment with Dr. Soulsby; in addition, he was working steadily at the time the gout flare-ups began, and with income, one would expect the claimant to seek some treatment if he was suffering to the extent alleged on a frequent basis.
>
> The evidence of record shows surgery successfully repaired the Achilles tendon rupture since the claimant was able to return to work which was, at times, physically demanding, for several years after the repair. As to the possible stress fracture shown on x-rays as noted in Dr. Soulsby's records, this was an acute situation which, as the claimant testified, resolved in one week upon wearing a post operative shoe; the claimant has not sought further treatment for this condition. The evidence of record shows the claimant has had minimal treatment for the gout, which treatment successfully abated his symptoms, by his own testimony. The claimant also testified to five medications which alleviate his gout symptoms, with no side effects established which would interfere with the jobs identified by the vocational expert. The claimant's work attendance records show only the claimant's excuses for absences and tardiness, without any verification from medical sources

> or elsewhere, and so do not establish that these flare-ups occurred. The medical records note that the claimant reported to Dr. Soulsby in March 2006, that he was drinking a six-pack of beer a day; whereas at the hearing a month later, the claimant denied such heavy drinking and denied that drinking was the cause of his work absences, a disproportionate share of which occurred just after the weekends.
>
> Although the claimant minimized his activities of daily living, testifying that he just sits in his recliner, he admitted providing sole care full-time for his two sons, ages 4 and 8, including household chores. The claimant is apparently able to care for young children at home, which can be quite demanding both physically and emotionally, without any particular assistance; and he has not reported any particular help in maintaining a household.

(Tr. at 23.)

The ALJ's reasons for rejecting Claimant's subjective complaints of pain are reasonable and well supported by substantial evidence of record. Claimant complains regarding the ALJ's findings related to his ability to afford medical treatment and his lack of effort in obtaining medical treatment. Claimant's surgery related to his burns was financed by charity, and he claims he did not enjoy that same benefit related to his other impairments. The ALJ's findings in this regard are reasonable and well explained. Furthermore, the substantial medical evidence of record does not indicate the existence of a serious and disabling impairment requiring further treatment, prescribed or not.

Claimant further complains that he was consistent in reporting his activities of daily living and that the ALJ should have credited his testimony in this regard. The ALJ's findings about

Claimant's daily activities are reasonable and supported by substantial evidence.

For the reasons set forth above, it is hereby respectfully RECOMMENDED that the presiding District Judge AFFIRM the final decision of the Commissioner and DISMISS this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED, and a copy will be submitted to the Honorable John T. Copenhaver, Jr.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have ten days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.

1984). Copies of such objections shall be served on opposing parties, Judge Copenhaver, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

January 13, 2009
    Date

Mary E. Stanley
United States Magistrate Judge